# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 21-1877V**

MICHAEL MAXWELL,

Petitioner,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent.

Chief Special Master Corcoran

Filed: February 27, 2024

*Alison H. Haskins, Siri Glimstad, LLP, Aventura, FL, for Petitioner.*

*Eleanor Hanson, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On September 21, 2021, Michael Maxwell filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered Guillain-Barré syndrome ("GBS") as defined by the Vaccine Injury Table, or, in the alternative a caused-in-fact injury, after receiving an influenza ("flu") vaccine on October 26, 2018. Petition at ¶¶ 1, 21-22. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters. After Respondent conceded entitlement, the parties were unable to resolve damages on their own,[3] so I ordered briefing on the matter.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] Approximately one month after I determined Petitioner was entitled to compensation, the parties informed me that they had reached an impasse in their damages discussions and requested that I set a briefing schedule. Status Report, filed Sept. 21, 2023, ECF No. 38; *see also Maxwell v. Sec'y of Health & Hum.*

For the reasons set forth below, I find that Petitioner is entitled to an award of damages in the amount $**140,000.00**, **reflecting actual pain and suffering.** The parties have agreed Petitioner also is entitled to **$4,674.11 for unreimbursed expenses**.

## I. Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my

---

*Servs.,* No. 21-1877V, 2023 WL 6208754 (Fed. Cl. Spec. Mstr. Aug. 15, 2023) (finding Petitioner suffered the residual effects of his GBS illness for more than six months and was entitled to compensation).
.

predecessor Chief Special Masters) adjudicating similar claims.[4] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

## II. The Parties' Arguments

The parties agree that Petitioner is entitled to $4,674.11 for past unreimbursed medical expenses. Petitioner's Memorandum of Law in Support of Petitioner's Motion for Findings of Fact and Conclusions of Law Regrading Entitlement to Compensation and Damages ("Motion"), filed Nov. 7, 2022, at 35, ECF No. 31-1; Respondent's Brief on Damages ("Response"), Oct. 23, 2023, at 1, 18, ECF No. 42; Petitioner's Reply to Response ("Reply"), filed Oct. 30, 2023, at 11, ECF No. 43. Thus, the only area of dispute is regarding the appropriate pain and suffering award.

Emphasizing his prior condition as a healthy and athletic 17-year-old who dreamed of playing lacrosse in college and becoming a Navy Seal, additional symptoms of headaches and speech difficulties, and continued fatigue and lack of endurance, Petitioner initially sought an actual pain and suffering award of $175,000.00. Motion at 31-32. But after I cautioned (at the time I ruled on entitlement) that the proposed amount of $175,000.00 appeared to be slightly higher than I would normally award for GBS with a moderate course, limited treatment, and few to no longer-standing sequelae,[5] Petitioner reduced his demand to $160,000.00. Reply at 2. In his initial motion, Petitioner favorably compares his circumstances to those experienced by the petitioners in *W.B, Dillenbeck, Johnson, Presley,* and *Cegielski.*[6] – cases involving past pain and suffering awards ranging from $155,000.00 to $180,000.00. Motion at 32-35.

Respondent counters that "[t]he facts of this case and recent analogous decisions

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of GBS claims, were assigned to former Chief Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

[5] *Maxwell*, 2023 WL 6208754, at *7.

[6] *W.B. v. Sec'y of Health & Hum. Servs.,* No. 18-1634V, 2020 WL 5509686 (Fed. Cl. Spec. Mstr. Aug. 7, 2020) (awarding $155,000.00 for actual pain and suffering); *Dillenbeck v. Sec'y of Health & Hum. Servs.,* No. 17-0428V, 2019 WL 4072069 (Fed. Cl. Spec. Mstr. July 29, 2019) (a decision I issued awarding $170,000.00 for past pain and suffering and $10,857.15, the net present value of payments of $5,000.00 per year for 22 years); *Johnson v. Sec'y of Health & Hum. Servs.,* No. 16-1356V, 2018 WL 5024012 (Fed. Cl. Spec. Mstr. July 20, 2018) (awarding $180,000.00 for actual pain and suffering); *Presley v. Sec'y of Health & Hum. Servs.,* No. 17-1888V, 2020 WL 1898856 (Fed. Cl. Spec. Mstr. Mar. 23, 2020) (awarding $180,000.00 for actual pain and suffering); *Cegielski v. Sec'y of Health & Hum. Servs.,* No. 17-0570V, 2021 WL 1440205 (Fed. Cl. Spec. Mstr. Mar. 16, 2021) (awarding $180,000.00 for actual pain and suffering).

. . . warrant an award of not more than $100,000.00." Response at 10. Emphasizing Petitioner's limited treatment and quick recovery, he maintains that Petitioner's pain and suffering was not as great as those of the petitioners in the cited cases. *Id.* at 11-13, 16-17. Instead, he proposes *Granville, Castellanos, Shankar* and *Weil*,[7] involving awards ranging from $92.500.00 to $140,000.00, as better comparable cases. Response at 13-16.

On reply, Petitioner criticizes Respondent's reliance on past proffered awards, arguing that "if the Court 'always' awards more than Respondent proffers, the most reasonable conclusion is that Respondent's proffers do _not_ in fact represent full value and should be adjusted in light of the Court's guidance." Reply at 3 (emphasis in the original). He also accuses Respondent of ignoring important aspects of his suffering, such as accompanying symptoms of headaches, facial weakness, and blood pressure issues; his disappointment at learning he was disqualified from military service; and the timing of his GBS illness during his junior year of high school. *Id.* at 5-7. Discussing the cases proposed by Respondent, Petitioner maintains his facts and circumstances warrant a greater pain and suffering award.

### III. Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. Although not yet an adult, the record reflects that at all times Petitioner was a competent teenager with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

In performing this analysis, I have reviewed the record as a whole, including the medical records, affidavits, and all assertions made by the parties in written documents. I considered prior awards for pain and suffering in both SPU and non-SPU GBS cases and rely upon my experience adjudicating these cases.[8] However, I ultimately base my

---

[7] *Granville v. Sec'y, of Health & Hum. Servs.,* No-21-2098V, 2023 WL 6441388 (Fed. Cl. Spec. Mstr. Aug. 30, 2023) (awarding $92, 500.00 for actual pain and suffering); *Castellanos v. Sec'y of Health & Hum. Servs.,* No. 19-1710V, 2022 WL 1482497 (Fed. Cl. Spec. Mstr. Mar. 30, 2022) (awarding $125,000.00 for actual pain and suffering); *Shankar v. Sec'y of Health & Hum. Servs.,* No. 18-1382V, 2022 WL 2196407 (Fed. Cl. Spec. Mstr. May 5, 2022) (awarding $135,000.00 for actual pain and suffering); *Weil v. Sec'y of Health & Hum. Servs.,* No. 21-0831V, 2023 WL 1778281 (Fed. Cl. Spec. Mstr. Feb. 6, 2023) (awarding $140,000.00 for actual pain and suffering).

[8] Statistical data for all GBS cases resolved in SPU by proffered amounts from inception through January 1, 2024 reveals the median amount awarded to be $171,133.72. The awards in these cases - totaling 364, have typically ranged from $128,645.56 to $256,835.75, representing cases between the first and third quartiles and awards comprised of all categories of compensation – including lost wages. 47 cases include the creation of an annuity to provide for future expenses.

Past pain and suffering amounts awarded in substantive decisions issued in 34 SPU GBS cases range from $92,500.00 to $192,500.00, with an additional case involving annuity payments. The median amount

determination on the circumstances of this case.

The evidence shows that Petitioner – age 17 when vaccinated - suffered a mild to moderate GBS illness which substantially improved within three months. Thereafter, Petitioner's symptoms were mild, primarily fatigue, necessitating a ruling that he suffered the residual effects of his GBS illness for at least six months. *Maxwell,* 2023 WL 6208754, at *1; *see* Section 11(c)(1)(D) (the Vaccine Act's severity requirement).

Although initially misdiagnosed with a sinus infection at an urgent care appointment ten days post-vaccination (Exhibit 4 at 2), or with rhabdomyolysis[9] during his first visit to the emergency room ("ER") three days later (Exhibit 5 at 9-15), Petitioner eventually obtained an accurate GBS diagnosis during a second trip to the ER on November 21, 2018, less than a month post-vaccination, and only five days after the onset of his symptoms (Exhibit 2 at 382-84). However, the suffering Petitioner experienced during the acute phase of his GBS illness was no doubt heightened by the severity of his upper and lower extremity weakness, as well as the more unusual symptoms he experienced - severe headaches, facial weakness which caused difficulties speaking, and hypertension resulting in episodes of tachycardia.[10] *See,* e.g.*,* Exhibit 2 at 383 (noting facial weakness and difficulty opening his jaw), 382 (noting severe headache), 394 (noting the hypertension and tachycardia were GBS sequelae).

Hospitalized for nine days, initially in the intensive care unit, Petitioner received a five-day course of IVIG therapy. Exhibit 2 at 383, 400. In his affidavit, Petitioner described difficulties chewing and sleeping due to his headaches and facial numbness. Exhibit 15 at ¶ 6. Noted to require a rolling walker when first evaluated, Petitioner required speech, occupation, and physical therapy. Exhibit 2 at 398, 422-23.

Discharged from the hospital on November 29, 2018, Petitioner was transferred to an inpatient rehabilitation facility with the expectation that he would require ten to fourteen days of skilled nursing care and at least three hours of daily therapy. Exhibit 2 at 740-42. During his therapy sessions, Petitioner was described as motivated (*e.g., id.* at 754), but often requiring breaks to manage his fatigue (*e.g., id.* at 762). By December 4, 2018, he reported feeling normal again. *Id.* at 771. After showing remarkable progress and achieving all physical and occupational goals, Petitioner was discharged to his home on

past pain and suffering award in these 35 cases was $165,000.00, with awards falling within the first and third quartiles ranging from $155,000.00 to $180,000.00.

[9] Rhabdomyolysis exertional involves severe muscle soreness and recumbency "due to intense, prolonged physical exertion." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY ("DORLAND'S") at 1637 (32th ed. 2012).

[10] Tachycardia is an "excessive rapidity in the action of the heart." DORLAND'S at 1867.

December 5, 2018, after only seven days of inpatient care, without any needed medical equipment. *Id.* at 833. The medications needed to control his high blood pressure and headaches were discussed, but it was noted that he had not needed them for the previous five days. *Id.*

Thereafter, Petitioner continued to experience only mild residual symptoms. In late December 2018 and early January 2019, he attended three outpatient PT sessions. Exhibit 2 at 872-87. After his third and last PT session on January 4, 2019, Petitioner was cleared for "a gradual return to his sport" (lacrosse) but cautioned "to monitor his heart rate and perceived exertion as well as to look for signs of fatigue." Exhibit 2 at 886. And he was able to attend school being on January 7, 2019 (Exhibit 15 at ¶ 12), albeit pursuant to an IAP (Individual Accommodation Plan), also known as a 504 plan, that allowed additional transition time, breaks, a flexible schedule, and preferential seating (*id.*; *see* Exhibit 17 (the IAP)). By early February 2019, Petitioner's treating physicians opined that he had "no obvious neurologic deficits" (Exhibit 6 at 59 (pediatric neurologist's opinion)), but "[h]is stamina remains somewhat diminished" (*id.* at 66 (neuropsychologist)). In late March 2019, he was cleared to participate in driver training. Exhibit 2 at 944.

Petitioner asks that I consider circumstances particular to his case, such as the negative effect of his GBS illness on his goals of playing lacrosse during college, joining the military, and becoming a Navy Seal. And the record shows that prior to his illness Petitioner was an excellent student and lacrosse player. *See,* e.g., Exhibit 19 (affidavit from Petitioner's lacrosse coach indicating he was a top athlete and dedicated player expected to join the Varsity team during his junior year). But the likelihood Petitioner would realize these worthy goals depended on many factors having nothing to do with his experiencing GBS. For example, becoming a Navy Seal is extremely difficult, and never assured even for completely healthy and fit individuals. Similarly, some of the negative outcomes Petitioner portrays as unavoidable may be circumvented. Although GBS is listed as an exclusionary condition for military service, for example, Petitioner has not yet made any attempt to obtain an exception to this rule. Still, I recognize that any heightened difficulty or complete loss of an opportunity is disappointing. Furthermore, the timing of Petitioner's GBS illness, during his crucial junior year of high school, no doubt caused him additional anguish and frustration.

While recognizing that they were proposed in his initial motion, when Petitioner sought a higher pain and suffering award, Petitioner's comparable cases are not ultimately all that helpful. *Presley*, for example, involved a diabetic petitioner with an amputated leg, who lived alone in a remote area, had a fall resulting in his inability to get help until discovered by a neighbor, suffered pain during nine attempts to perform a lumbar puncture, was unable to drive for months, and suffered residual symptoms for more than three years. *Presley,* 2020 WL 1898856, at *10-11. Instead, I find the

circumstances suffered by the petitioners in *Shankar* and *Weil* to be the closest to those Petitioner faced. Both experienced similarly severe acute phases - requiring lumbar punctures for diagnosis, IVIG therapy, and inpatient and outpatient therapy thereafter. *Shankar,* 2022 WL 2196407, at *5-6; *Weil,* 2023 WL 1778281, at 5-6.

I previously have rejected Respondent's argument that the amounts awarded in proffered cases are a more accurate gauge of the appropriate amount to be awarded than reasoned decisions from the court and special masters. *Sakovits*, 2020 WL 3729420, at *4. While "settled cases and proffers provide *some* evidence of the kinds of awards received overall in comparable cases," they are not as persuasive as reasoned decisions from a judicial neutral. *Id.* (emphasis in original). And, as I have explained previously at expedited "Motions Day" hearings, GBS pain and suffering awards generally should be higher than what is awarded to petitioners who have suffered a less frightening and physically-alarming injury, such as SIRVA. Thus, Petitioner's pain and suffering award should be greater than the $100,000.00 proposed by Respondent. Weighing all of the above, I deem an award of $140,000.00 to be fair and reasonable.

## Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $140,000.00 represents a fair and appropriate amount of compensation for Petitioner's past/actual pain and suffering.**[11] And, as agreed upon by the parties, **Petitioner is entitled to $4,674.11 for his past unreimbursed expenses.**

**I therefore award Petitioner a lump sum payment of $144,674.11, representing compensation in the amounts of $140,000.00 for actual pain and suffering and $4,674.11 for actual unreimbursable expenses in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[12]

[11] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[12] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master